# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **THERESA BATCHELLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-10-162-SPS** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Theresa Batcheller requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on November 28, 1966, and was forty-two years old at the time of the supplemental administrative hearing (Tr. 20).  She has past relevant work as movie theater assistant manager, general office worker, and office manager (Tr. 14).  The claimant alleges she has been unable to work since October 4, 2005 due to panic attacks, depression, bipolar disorder, anxiety, phlebitis in her right leg, and insomnia (Tr. 149).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and also for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  Her applications were denied.  ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 27, 2009.  The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation.  He found that although the claimant's depression and anxiety were severe impairments, she retained the residual functional capacity (RFC) to perform medium work, limited to understanding,

-3-

remembering and carrying out simple and some complex tasks, interacting appropriately with supervisors, coworkers and the general public, and responding appropriately to changes in a work setting (Tr. 11). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a movie theater assistant manager, general office clerk, and office manager (Tr. 14).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly consider the opinions of her treating physician Dr. Saleh Parvez, M.D. and consultative psychologist Dr. Denise LaGrand, Ph.D.; and, (ii) by failing to properly assess her RFC. Because the ALJ did fail to properly analyze those opinions, the decision of the Commissioner must be reversed and the case remanded for proper analysis.

The claimant began receiving treatment at Carl Albert Community Health Center in April 2006. Her initial psychosocial evaluation reveals that she had "been feeling very depressed, tearful, anxious" and had been molested by an uncle when she was five (Tr. 266). The claimant was assigned a score of 45 for her global assessment of functioning (GAF), and the diagnostic impression was attention deficit hyperactivity disorder and dysthymia disorder (Tr. 268).

Dr. Parvez of CACHC completed two medical source statements styled "Mental Source Opinion of Ability to do Work-Related Activities." The first was completed on July 11, 2007. Dr. Parvez noted that the claimant suffered from moderate limitations in her ability to accept instructions and criticism from supervisors and ability to work with

others without causing distractions, and marked limitations in her ability to interact appropriately with the public (Tr. 276-77).  Dr. Parvez also opined that she suffered from extreme limitations in the other areas: (i) ability to understand and remember detailed instructions; (ii) ability to maintain attention and concentration for extended periods in order to perform simple tasks; (iii) ability to maintain attention and concentration for extended periods in order to perform detailed tasks; (iv) ability to adhere to a schedule and maintain regular attendance; (v) ability to work close to others without distraction; (vi) ability to perform at a consistent pace without an unreasonable number or length of rest periods; (vii) ability to handle normal work stress; and, (viii) ability to maintain socially appropriate behavior and basic standards of neatness and cleanliness (Tr. 276-77).  Dr. Parvez found that the claimant's signs and symptoms consisted of memory difficulties, sleep disturbance, social withdrawal or isolation, blunt, flat, or inappropriate affect, manic episodes, feelings of guilt or worthlessness, generalized persistent anxiety, personality change, mood disturbance, emotional lability, decreased energy, anhedonia or pervasive loss of interests, difficulty concentrating or thinking, and hostility or irritability (Tr. 278).

The second medical source statement prepared by Dr. Parvez was dated March 14, 2008.  He noted that the claimant suffered from moderate limitations in her ability to adhere to a schedule and maintain regular attendance and her ability to work with others without causing distractions (Tr. 300-01).  Dr. Parvez found marked limitations related to the claimant's ability to understand and remember simple instructions, ability to maintain

attention and concentration for extended periods in order to perform simple tasks, ability to work close to others without being distracted, ability to perform at a consistent pace without an unreasonable number or length of rest periods, ability to interact appropriately with the public, and ability to accept instructions and criticism from supervisors (Tr. 300-01). Dr. Parvez also opined that the claimant had extreme limitations in the following areas: (i) ability to understand and remember detailed instructions; (ii) ability to maintain attention and concentration for extended periods in order to perform detailed tasks; and (iii) ability handle normal work stress (Tr. 300-01). Dr. Parvez found at that time that the claimant's signs and symptoms consisted of memory difficulties, sleep disturbance, social withdrawal or isolation, blunt, flat, or inappropriate affect, manic episodes, obsessions or compulsions, feelings of guilt or worthlessness, persistent irrational fears, generalized persistent anxiety, mood disturbance, emotional lability, panic attacks, difficulty concentrating or thinking, hostility or irritability, and intrusive thoughts of traumatic events (Tr. 302).

The ALJ assigned little weight to Dr. Parvez's opinions because his later medical source statement "had significantly different (less) limitations" than his earlier one. The ALJ also observed that the second medical source statement recorded persistent irrational fears and intrusive thoughts, which he speculated "would very likely adversely impact an individual's abilities" (Tr. 13). It is not entirely clear what the ALJ meant in this regard, but it appears that he thought that the second medical source statement was inconsistent

with the first one and that as a result, neither was worthy of credence.  But in any event, the ALJ failed to properly analyze Dr. Parvez's opinion about the claimant's limitations.

The ALJ acknowledged that Dr. Parvez qualified as a treating physician because he had been treating the claimant since 2006.  An opinion from a treating physician is entitled to controlling weight if "'the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'"  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  However, "[e]ven if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"  *Id., quoting Watkins*, 350 F.3d at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4.  The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).  The ALJ did not provide any such analysis of Dr. Parvez's opinion.

The ALJ also failed to properly analyze the opinion of Dr. LaGrand regarding the claimant's limitations. To begin with, the ALJ again failed to evaluate the proper weight to give Dr. LaGrand's opinion under *Watkins*. *See, e. g.,* 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."). *See also* 20 C.F.R. § 416.927(d). But unlike the opinion from Dr. Parvez, the ALJ did not criticize Dr. LaGrand's opinion for inconsistency or otherwise; he noted only that she "found that the claimant had no more than moderate limitations in any area" (Tr. 14), and concluded "there is no evidence that despite [the claimant's] impairments and resultant limitations that she is unable to engage in any and all forms of substantial gainful activity." (Tr. 14). But the ALJ neglected to mention that according to the testimony of the vocational expert, those moderate mental limitations imposed upon the claimant by Dr. LaGrand would preclude all work of any kind (Tr. 26-7). This evidence contradicted not only the ALJ's above-quoted conclusion, but also his ultimate determination that she was not disabled. Thus, the ALJ should at least have identified the evidence he rejected, *i. e.*, Dr. LaGrand's opinion about the claimant's mental limitations or the testimony of the vocational expert that a person with such limitations could not perform any work. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is

'significantly probative.'").  *See also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

Because the ALJ failed to properly analyze the opinion evidence from physicians, the decision of the Commissioner must be reversed and the case remanded to the ALJ for proper analysis.  If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work she can perform, if any, and ultimately whether she is disabled.

<b>Conclusion</b>

In summary, The Court finds that incorrect legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly hereby REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 29th day of September, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma